**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7                        IN THE UNITED STATES DISTRICT COURT

8                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   ELECTRONICS FOR IMAGING, INC.,           No.  C 01-4853 MJJ
                                              No.  C 05-0619 MJJ
11                    Plaintiff,

12        v.                                  **ORDER GRANTING IN PART AND
                                              DENYING IN PART ELECTRONICS
13                                            FOR IMAGING, INC.'S MOTION TO
                                              DISMISS FIRST AMENDED
14   JAN COYLE and KOLBET LABS,               COMPLAINT**

15                    Defendants.
     _____/
16
     J & L ELECTRONICS, LLC,
17
                      Plaintiff,
18
          v.
19
     ELECTRONICS FOR IMAGING, INC.,
20
                      Defendant.
21
     _____/
22

23                              **INTRODUCTION**

24        Before the Court is Electronics for Imaging, Inc.'s ("EFI") motion to dismiss certain claims

25   from J & L Electronics, LLC's First Amended Complaint.  For the reasons set forth below, EFI's

26   motion is **GRANTED IN PART AND DENIED IN PART**.

27                            **FACTUAL BACKGROUND**

28        Hoping to enter into a profitable business arrangement with Jan Coyle and Kolbet Labs

**United States District Court**
For the Northern District of California

("Coyle") regarding their technology, EFI entered into a non-disclosure agreement ("NDA") in September of 1997.  Under the terms and conditions of the NDA, EFI promised not to disclose or utilize confidential information or technologies relevant to or derived from Coyle's technologies, including Coyle's soon-to-be-issued U.S. Patent No. 6,337,746 ("the '746 Patent").  In late 1997, a representative of EFI traveled to Kolbet Labs, in Reno, Nevada, to view the technology subject to Coyle's pending patent.  After viewing the subject technology, the representative of EFI stated that his company would be interested in further discussions of the technology after Coyle's application for the '746 Patent had been completely processed and the patent issued.

In late 1999 or early 2000, the parties entered into discussions which led to the signing of a second NDA in January 2000.  Over the course of the next two years, representatives of the parties visited each other's facilities to demonstrate or view Coyle's technology and to consider an arrangement by which EFI would license or buy the technology.

When no deal was reached, the relationship turned sour.  In or about the week of November 26, 2001, Coyle began making threats to EFI to the effect that he would sue it based on EFI's infringement of his patent and that it had stolen his trade secrets.  The situation came to a head when, at a December 5, 2001 negotiation session, Coyle issued an ultimatum to EFI—either pay $18,000,000 to license his technology within 10 days—or be sued.

### A.     First California Action

EFI responded by filing a declaratory action less than a week later, on December 11, 2001 ("First California Action").  The complaint prayed for (a) invalidity and non-infringement of the '746 Patent, (b) a finding of no breach of the two NDAs executed by and between Coyle and Plaintiff concerning technology related to the '746 Patent, and (c) a finding of no trade secret misappropriation concerning technology related to the '746 Patent.  On January 8, 2002, the '746 Patent issued.  EFI then amended its complaint to include a declaratory claim for patent invalidity. Coyle responded by filing a motion to dismiss based on improper venue, jurisdictional grounds and failure to comply with the Declaratory Judgment Act ("DJA").  The Court granted Coyle's motion to dismiss for lack of personal jurisdiction on March 27, 2002.  Plaintiff timely appealed to the Federal Circuit, which reversed and remanded the case for further proceedings. *Elecs. for Imaging, Inc. v.*

**United States District Court**
For the Northern District of California

1    *Coyle*, 340 F.3d 1344, 1355 (Fed. Cir. 2003).

2         On February 13, 2004, the Court granted Coyle's motion to dismiss under the DJA.  EFI

3    timely appealed the Court's order, and the Federal Circuit again reversed and remanded the case for

4    further proceedings.  *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005).

5         **B.    Nevada Action**

6         On January 21, 2002, Coyle assigned to J & L Electronics, LLC ("J&L") all right, title,

7    license and interest in the relevant technology.  On February 25, 2002, J&L filed suit against EFI in

8    the District of Nevada based on the same operative facts as the First California Action.  The Nevada

9    District Court dismissed the action on March 31, 2003 for lack of personal jurisdiction over EFI, and

10   the Federal Circuit affirmed on February 9, 2004.

11        **C.    Second California Action**

12        On February 17, 2004, EFI filed a second complaint against Coyle in California ("Second

13   California Action") including the same claims as the First California Action and an additional

14   declaratory claim against Coyle's U.S. Patent No. 6,618,157 ("the '157 Patent").  EFI later amended

15   the complaint to include claims for patent infringement, violation of the Lanham Act, product

16   disparagement, and violation of California Business and Professions Code Sections 17200, *et seq*.

17   Coyle filed a motion to dismiss the complaint under the DJA, and the Court denied the motion on

18   May 17, 2004.  Upon learning that the Federal Circuit remanded the First California Action, EFI

19   voluntarily dismissed the Second California Action on January 11, 2005.

20        **D.    Arizona Action**

21        On May 3, 2004, J&L filed the present action against EFI in the District of Arizona

22   ("Arizona Action").  EFI moved to transfer, stay or dismiss the Arizona Action.  On January 19,

23   2005, the Arizona court ordered the Arizona action transferred to the Northern District of California.

24   On March 7, 2005, the Court ordered the present action consolidated with the First California

25   Action.

26                              **LEGAL STANDARD**

27        A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in the

28   complaint.  *See Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337 (9th Cir. 1996).  Dismissal of an

action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957)).  In reviewing such a motion, the Court must assume all factual allegations to be true and must construe them in the light most favorable to the nonmoving party.  *See North Star v. Arizona Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983).  However, the Court need "not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).  The Court will dismiss the complaint or any claim in it without leave to amend only if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

## ANALYSIS

### I.     Antitrust Claims

EFI moves to dismiss five antitrust claims asserted under Section 2 of the Sherman Act: 1) monopolization of the industry; 2) attempted monopolization of the industry; 3) anticompetitive acquisition of Coyle Technology; 4) filing an action in violation of 15 U.S.C. § 2; and 5) attempt to maintain monopoly by patent misuse.  The Court agrees with EFI that each of the last three claims is a variant of a Section 2 actual monopolization claim, with elements largely tracking the first claim.

EFI asserts that each of these claims must be dismissed because J & H has failed to adequately plead the essential elements of antitrust claims.  Furthermore, EFI contends that the fourth and fifth claims should be dismissed because J & H has failed to plead with the requisite specificity that the litigation by EFI on which those claims are based constituted "sham" litigation.

J & H argues that it has properly plead its antitrust claims and that the allegations satisfy the liberal pleading requirements under Federal Rule of Civil Procedure 8(a).  Additionally, J & H contends that its allegations are sufficient under *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416

1    (10th Cir. 1952), because some of its antitrust claims are based on an "overall scheme."[1]

2        **A.    Monopolization Claim**

3        To survive a motion to dismiss a monopolization claim, a plaintiff must allege, in addition to

4    antitrust injury: "(1) the possession of monopoly power in the relevant market and (2) the willful

5    acquisition or maintenance of that power as distinguished from growth or development as a

6    consequence of a superior product, business acumen, or historic accident." *Eastman Kodak. Co. v.*

7    *Image Technical Serv., Inc.*, 504 U.S. 451, 481 (1992) (citations omitted).

8        The Supreme Court has held that monopoly power is "the power to control prices or exclude

9    competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). To

10   demonstrate market power circumstantially, as J & H as attempted to do, J & H must: 1) define the

11   relevant market, 2) show that the defendant owns a dominant share of that market, and 3) show that

12   there are significant barriers to entry and who that the existing competitors lack the capacity to

13   increase their output in the short run. *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434

14   (9th Cir. 1995).

15       "Monopoly power in the relevant geographical market . . . is an essential element of a

16   monopolization claim." *Rutman Wine,* 829 F.3d at 739. The first paragraph of the First Amendment

17   Complaint states that "EFI has purposefully obtained and maintained an overwhelmingly dominant,

18   if not preclusive, status with the printer control industry." (First Amended Complaint ("FAC"), ¶1.)

19   J & H contends that the "printer control industry" sufficiently describes the relevant market. The

20   Court disagrees. This allegation is nothing more than a legal conclusion that assumes such a market

21   exists. J & H's description of the market also fails to provide any information of the market's

22   purported geographical scope (regional, national, or global). *See Rockbit Indus. U.S.A., Inc. v. Baker*

23   *Hughes, Inc.*, 802 F. Supp. 1544, 1550 (S.D. Tex. 1991) ("Because the relevant market provides the

24   _____

25       [1] J & L contends that *Kobe* and its progeny provides a "distinct jurisprudential basis for antitrust liability" whenever the plaintiff alleges an overall scheme to violate Section 2 that involves, as only one

26   aspect, the misuse of patents. *See* J & L's Opposition to EFI's Motion to Dismiss ("Opp.") at 6:26. J & L further alleges that certain *Kobe* fact patterns, including the one it alleges here, materially change

27   the elemental analysis under Section 2 by negating certain Section 2 elements and presuming others. The Court disagrees. An examination of *Kobe* and its progeny reveals that this line of cases does not

28   alter the substantive elements or pleading requirements applicable to Section 2 monopolization or attempted monopolization claims. In fact, the Ninth Circuit has never relied upon *Kobe* to modify the essential elements of pleading and proof under Sherman Act cases.

United States District Court
For the Northern District of California

framework against which economic power is measured, defining the product and geographic markets [is] a threshold requirement under § 2."); *United States v. LSL Biotechnologies,* 379 F.3d 672, 700 (9th Cir. 2004).  Furthermore, J & H has not alleged significant barriers to entry of the market or that the existing competitors lack the capacity to increase their output in the short run.  *See Townsend v. Rockwell Int'l Corp.*, 2000 WL 433505, *12 (N.D. Cal. March 28, 2000).  Thus, the Court finds that J & H has failed to adequately allege "the possession of monopoly power in the relevant market."[2]

Additionally, in order to recover under the Sherman Act, a plaintiff must demonstrate antitrust injury.  *Rebel Oil*, 51 F.3d at 1433.  In doing so, J & H must show more than mere injury to its own interests.  Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation."  *Brunswick Corp. v. Pueblo Bowl-O-Mat., Inc.*, 429 U.S. 477, 489 (1977).

In the FAC, J & H alleges that it "has been damaged by EFI's actions in violation of 15 U.S.C. § 2, as alleged herein."  (FAC, ¶74).  Upon reviewing the FAC, it appears that the damages J & L could be referring to are from alleged breaches of contract, misappropriation of trade secrets, infringement of patents, and misconduct in litigation.  (FAC, ¶¶23-69).  These injuries, even if proven, are not related to EFI's purported monopoly.  Rather, these allegations only relate to the injuries suffered by J & H, and do not speak to the manner in which EFI's conduct injured competition in the marketplace.  *See American Ad Management, Inc. v. General Telephone Co. of California,* 190 F.3d 1051, 1056-57 (9th Cir. 1999).  Therefore, the Court finds that J & H's allegations of antitrust injury are insufficient.

In sum, J & H has failed to adequately allege all the necessary elements of a Section 2 monopolization claim.  Accordingly, EFI's motion to dismiss this claim is **GRANTED** with leave to amend.

### B.    Attempted Monopoly

---

[2]While the relevant market may often be a question of fact, the Ninth Circuit has often held that the plaintiff's failure to identify a relevant market is a proper ground for dismissal in a Rule 12(b)(6) motion. *See Tanaka v. University of S. Cal.*, 252 F.3d 1059, 1062-63 (9th Cir. 2001); *Rutman Wine*, 829 F.2d at 736.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    The essential elements of a cause of action for attempted monopolization are: "(1) specific

2   intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at

3   accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4)

4   causal antitrust injury." *Rebel Oil*, 51 F.3d at 1433 (citations omitted). Thus, the requirements for

5   attempted monopolization are similar to the requirements for a monopolization claim, "differing

6   primarily in the requisite intent and the necessary level of monopoly power." *Image Technical*

7   *Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997).

8        1.    Specific Intent

9        A claim for attempted monopolization requires allegations of a specific intent to control

10  prices or destroy competition in the relevant market. *Rutman Wine*, 829 F.2d at 736. The Ninth

11  Circuit recently stated that "[a]nticompetitive conduct alone can satisfy the specific intent

12  requirement if the conduct form[s] the basis for a substantial claim of restraint of trade or is clearly

13  threatening to competition or clearly exclusionary." *Confederated Tribes of Siletz Indians of Oregon*

14  *v. Weyerhaeuser, Co.*, 2005 WL 1269668, *7 (9th Cir. May 31, 2005) (internal quotation marks

15  omitted). Here, J & H alleges that "EFI's actions and statements regarding EFI's acquisition of

16  competing entities and technologies in the Industry demonstrate EFI's intent to control prices and

17  destroy competition." (FAC at ¶78). As noted above, J & H has adequately alleged that EFI's

18  purported practice of acquiring competitors to enhance its dominant market position. This

19  anticompetitive conduct, along with J & H's allegation that EFI intended "to control and prices and

20  competition," certainly helps satisfy the specific intent requirement. However, *Rutman Wine*

21  requires the plaintiff to allege that a defendant had a "specific intent to control prices or destroy

22  competition in a relevant market." 829 F.2d at 736. As noted above, J & H has not adequately

23  alleged the relevant market. Accordingly, J & H has failed to adequately plead this element.

24        2.    Probability of Monopolization

25        The Supreme Court has stated that "demonstrating the dangerous probability of

26  monopolization in an attempt case also requires inquiry into the relevant product and geographic

27  market and the defendant's economic power in that market." *Spectrum Sports, Inc. v. McQuillan*,

28  506 U.S. 447, 459 (1993). The Ninth Circuit has also instructed that market share is insufficient to

7

show market power and has found that courts evaluate the presence of entry barriers and the inability

of competitors to expand output.  *See Rebel Oil*, 51 F.3d 1421, n. 10 (9th Cir. 1995).  For the reasons

stated above, J & H's allegations regarding market power in the relevant market are woefully

lacking.  In the absence of sufficient allegations of market power in the relevant market, the Court

finds that J & H has not adequately alleged that EFI possesses a dangerous probability of

monopolization in the undefined market.

       **3.**    <u>Antitrust Injury</u>

As previously noted, J & H has not sufficiently alleged antitrust injury.

       **4.**    <u>Summary</u>

For these reasons, the Court finds that J & H has not adequately alleged the necessary

elements of an attempted monopolization claim.  Thus, EFI's motion to dismiss this claim is

**GRANTED** with leave to amend.

       **C.**    **Remaining Antitrust Claims**

Because the Court finds that J & H has not sufficiently alleged an actual monopolization

claim, J & H remaining three Claims must also be dismissed with leave to amend.  In addition, EFI

moves to dismiss J & L fourth and fifth antitrust causes of action on the additional ground that J & L

fails to plead a recognized exception to the *Noerr-Pennington* doctrine.  J & L's fourth and fifth

Antitrust Claims seek to base causes of action for actual monopolization on EFI's "filing claims

against Coyle and Kolbert" and assertion of "claims regarding the 314 Patent's coverage to

invalidate [J & L's] 746 Patent."  (FAC, ¶¶89, 96).

Under the *Noerr-Pennington* doctrine, private entities are immune from liability under

antitrust laws for "mere attempts to influence the passage or enforcement of laws" even if the laws

they advocate would have anticompetitive effects.  *See Eastern R.R. Presidents Conf. v. Noerr

Motor Freight, Inc.*, 265 U.S. 127, 135 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657,

670 (1965).  This immunity extends to all "conduct incidental to the prosecution of the suit."

*Columbia Pictures Indus., Inc. v. Profess. Real Estate Investors, Inc*., 944 F.2d 1525, 1528 (9th Cir.

1991).  Parties, however, are not immunized for their petitioning conduct if such conduct "is a mere

sham to cover what is actually nothing more than an attempt to interfere directly with the business

relationships of a competitor." *Noerr*, 365 U.S. at 144.  The Supreme Court has made clear that a "sham exception" to *Noerr-Pennington* must meet a two-tiered test.  First, the challenged lawsuit must be objectively baseless, without any reasonable basis to elicit a favorable outcome.  Only if that initial inquiry can be met does a court move on to the subjective motivation of the party's use of governmental process.  *See Professional Real Estate Inves. v. Columbia Pic. Indus. Inc.*, 508 U.S. 49, 56-57 (1993).

The Court finds that since J & L has relied upon EFI's conduct in the parties prior litigation concerning their intellectual property rights, J & L has subjected its First Amended Compliant to the pleading scrutiny of the *Noerr-Pennington* doctrine.  The Ninth Circuit has applied a heightened pleading standard to claims involving *Noerr-Pennington*.  *See Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 533 (9th. Cir. 1991).  "This heightened level of protection accorded petitioning activity is necessary to avoid a chilling effect on the exercise of this fundamental First Amendment right.  Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." *Id*. (citations and internal quotation marks omitted).  The Court finds that J & L has not alleged that EFI's lawsuit regarding its intellectual property disputes with J & L was a sham.  Nor has it alleged any facts suggesting that the lawsuit was so baseless that no reasonable litigant could have expected to succeed on the merits.  For this reason, EFI's motion to dismiss J & H's fourth and fifth Antitrust Claims is **GRANTED** with leave to amend.

**II.     State Law Claims**

**A.       Breach of Contract**

In its seventh and eighth causes of action, J & H asserts breach of contract claims based on the 1997 and 2000 Non-Disclosure Agreements, respectively.  EFI asserts that neither contract was made between EFI and F & H.  EFI also argues that J & L failed to plead the required element of resulting injury with respect to the 1997 NDA.  J & H contends that both the 1997 and 2000 NDA's were executed by and between Coyle d/b/a Kolbet Labs and EFI, and that Coyle "assigned the Coyle Technology, and all contract rights inuring to the benefit of Coyle with respect to the Coyle Technology, to J & L Electronics."  (FAC, ¶35).

Under California law, a claim for breach of contract requires: 1) a contract; 2) plaintiff's

9

performance or excuse of performance, 3) defendant's breach, and 4) resulting damages. *Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1135-36 (N.D. Cal 2004). Here, there is no dispute regarding the existence of the 1997 and 2000 NDA's, or whether F & H has adequately alleged that those contracts were breached. Rather, the Court must decide whether J & H has adequately alleged that it was a party to those contracts. The FAC states that both the 1997 NDA and the 2000 NDA were executed by and between Defendant Coyle d//b/a Kolbet Labs and EFI, and that Coyle "assigned the Coyle Technology, and all contract rights inuring to the benefit of Coyle with respect to the Coyle Technology, to J & L Electronics." (FAC, ¶¶24, 34, 35). The Court finds that these allegations are sufficient to demonstrate that a contractual agreement existed between J & L and EFI based upon the NDA's.

EFI also argues that F & H seventh claim for relief (1997 NDA) seeks damages only for Coyle, but not for F &H itself.[3] The Court agrees. However, F & H has characterized this mistake as a "clear typographical error." Given this error, the Court **GRANTS** EFI's motion to dismiss this claim with leave to amend.

### B. Misappropriation of Commercial Properties

EFI moves to dismiss J & H's claim for Misappropriation of Commercial Properties. EFI asserts that the commercial property allegedly misappropriated, the "Coyle Technology," ostensibly comprises patents and trade secrets. EFI notes that J & L has asserted separate claims for the alleged misappropriation of these patents and trade secrets, and thus concludes that J & H's claim for misappropriation of commercial properties is superfluous. The Court agrees. J & H has simply not alleged that the "Coyle technology" comprised anything other than trade secrets and patents. (FAC at ¶¶6, 7, 10, 25). Thus, the Court **DISMISSES** this claim with leave to amend.

### C. Unjust Enrichment

EFI asserts that because J & L has adequate remedies in law and equity for its patent and trade secret claims, its equitable claim for unjust enrichment must be dismissed. In support, Plaintiff cites *Marina Tenants Ass'n v. Deauville Marina Development Co.*, 181 Cal. App. 3d 122 (1986). *In*

---

[3]Federal Rule of Civil Procedure 17(a) requires that "every action shall be prosecuted in the name of the real party in interest."

United States District Court

For the Northern District of California

*Marina Tenants*, the court concluded that the plaintiff's claims for breach of a master lease were subsumed to the contract, thereby precluding an equitable claim for unjust enrichment. *Id*. at 134. Here, in contrast to *Marina Tenants*, the Court finds that J & L's claim for unjust enrichment is not subsumed to any of J & L's other claims for relief.

Furthermore, the Court finds that J & H has adequately plead the necessary elements of unjust enrichment: 1) receipt of a benefit; and 2) unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). Specifically, F & H alleges that EFI received trade secrets from regarding the Coyle technology (FAC, ¶25) and that EFI has benefitted from the use of that technology. (FAC, ¶139). Accordingly, EFI's motion to dismiss the unjust enrichment claim is **DENIED**.

**CONCLUSION**

For the foregoing reasons, EFI's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. If it so chooses, J & H shall have 25 days to amend its complaint.

**IT IS SO ORDERED.**

Dated: July __14__, 2005

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

11